UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ADAM A. MALIK ET AL.**,

   Plaintiffs,

v.                                                                      No. 4:21-cv-0088-P

**U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.**,

   Defendants.

## MEMORANDUM OPINION & ORDER[1]

This case arises from a border search at DFW Airport. At issue is whether the Government violated the First and Fourth Amendments when it seized, and then searched, a cell phone. Plaintiffs argue that the Government violated the Constitution; the Government argues no such violation occurred. As explained, the Court agrees with the Government.

## BACKGROUND

Plaintiff Adam Malik is a naturalized United States citizen, originally from Pakistan, who lives in the Dallas area and practices law at his own law firm, Malik & Associates, PLLC (the other Plaintiff).[2] On January 3, 2021, Mr. Malik boarded a flight in Costa Rica destined for the Dallas–Fort Worth Airport ("DFW Airport"). During that flight, a U.S. Customs and Border Protection ("CBP") officer flagged Mr. Malik in CBP's passenger screening system. Being flagged meant that Mr. Malik would be referred for a "secondary" inspection once he arrived at DFW Airport's customs inspection area.

Upon arrival at the DFW Airport, and after deplaning, Mr. Malik attempted to check-in at the Global Entry kiosk. But because he had

---

[1]This Memorandum Opinion & Order supersedes the Memorandum Opinion & Order (ECF No. 55) issued on July 14, 2022.

[2]The Court refers to both Mr. Malik and his law firm as "Mr. Malik."

been flagged, Mr. Malik was directed to the secondary inspection area, where he was separately interviewed by two CBP officers. Relevant here is the second interview. During that interview, Mr. Malik invoked the attorney–client privilege pursuant to his ethical duties as an attorney. Following that invocation, Mr. Malik (understandably) refused to consent to a "basic" search of his phone. Despite invoking the attorney–client privilege and refusing to allow a basic search of his phone, a CBP officer (with his supervisor's approval) detained Mr. Malik's cell phone for purposes of conducting a border search. Mr. Malik then received a "Detention Notice and Custody Receipt for Detained Property."

From DFW Airport, Mr. Malik's password-protected phone was sent to a lab in El Paso, Texas. The El Paso lab, however, could not bypass the phone's passcode; the phone was thus transferred to a computer lab in Houston, Texas. The Houston lab successfully bypassed the phone's passcode and accessed the phone's data. The Houston lab generated a Cellebrite report containing the phone's extracted data, which was then sent, along with the phone, to the CBP.

Because Mr. Malik asserted the attorney–client privilege, the CBP assembled a filter team to review the phone's data and redact any privileged material. Once screened, the filter team sent a limited set of data from the phone to the CBP officers at DFW Airport. From this limited set of data, a CBP officer then conducted a border search. After conducting the border search, the CBP returned the cell phone to Mr. Malik on May 21, 2021.

After his cell phone was detained, but prior to its return, Mr. Malik filed this lawsuit seeking declaratory and injunctive relief. Now before the Court are the Parties' cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When parties file cross motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences

in the light most favorable to the nonmoving party." *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 224 (5th Cir. 2020).

## ANALYSIS

The Court's analysis proceeds in two parts. *First*, the Court considers its jurisdiction. The Court concludes that it has jurisdiction over only one claim: Mr. Malik's expungement claim. *Second*, because this claim is premised on a constitutional violation, the Court then analyzes the merits. The Court concludes that no constitutional violation occurred and grants the Government's motion for summary judgment.

### A. Article III Standing

The Court starts with jurisdiction. The judicial power vested by Article III of the Constitution extends to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. Federal-court jurisdiction, and the judiciary's proper role, is thus limited to actual case or controversies. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). This case-or-controversy requirement mandates that plaintiffs "establish they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)); *see also Umphress v. Hall*, 500 F. Supp. 3d 553 (N.D. Tex. 2020) (Pittman, J.).

To establish Article III standing, a plaintiff must demonstrate that (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the injury was caused by the defendant, and (3) the injury would likely be redressed by the requested judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing, however, is not "dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, a plaintiff must establish standing for each claim asserted and for each form of relief that is sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008).

Claims for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. As such, "plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th

3

Cir. 2019). The threatened future injury must be an injury in fact that is not too speculative for Article III purposes. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Clapper*, 568 U.S. at 409. That means, in the declaratory-relief context, the alleged injury must be "imminent." In other words, there must be at least a substantial risk that the threatened future injury will occur.

   1. <u>Declaratory Judgment Claims (Counts I–VIII)</u>

In his Complaint, Mr. Malik seeks multiple declarations that Defendants' conduct violated the First and Fourth Amendments. On this record, however, Mr. Malik lacks standing to pursue declaratory relief.

For declaratory relief, a plaintiff must demonstrate they are "likely to suffer *future* injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983) (emphasis added). Mr. Malik must therefore establish that there is a "substantial risk" that he will suffer either a continuing injury or an injury in the future. *See Susan B. Anthony List*, 573 U.S. at 158.

Here, Mr. Malik seeks declaratory relief related only to past events. For example, he asks this Court to declare that "Defendants *violated* the First Amendment," *see* ECF No. 1 ¶¶ 102–04, 106–08 (emphasis added), and that "Defendants *violated* the Fourth Amendment," *see Id.* ¶¶ 110–12, 115–17, 120–22, 125 (emphasis added). These allegations—and the facts supporting them—are retrospective; they are premised on only past events. And while "past wrongs are evidence" of the likelihood of a future injury, they "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *City of L.A.*, 461 U.S. at 102–03. Thus, to establish standing, Mr. Malik must assert factual allegations, and produce evidence, demonstrating that there is a "substantial risk" that an injury will occur *in the future*. The Complaint and record are void of any such allegations or evidence.[3]

---

[3] Mr. Malik testified in a sworn deposition that he is a frequent traveler. But that fact alone is not enough to give this Court jurisdiction over his claims for declaratory relief. The law of standing is built on separation-of-powers principles. And, relevant to this case, the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd,* 521 U.S. 811, 819–20 (1997).

Because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy," *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003), Mr. Malik attempts to identify various "concrete" and "particularized" injuries-in-fact. Instead of "concrete" injuries, however, Mr. Malik articulates speculative injuries that depend on independent actors not subject to this litigation. For example, Mr. Malik argues he is likely subject to discipline by the State Bar of Texas and tort claims brought by his clients. But these are speculative injuries, not concrete ones. *See Umphress v. Hall*, 500 F. Supp. 3d 553 (N.D. Tex. 2020) (Pittman, J.). There is no evidence to suggest that the State Bar of Texas or Mr. Malik's clients are planning to act because of the border search. The Court maintains its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414.

The Court therefore concludes that Plaintiffs failed to allege an injury in fact sufficient to make out a "case or controversy between [them] and the defendants within the meaning of article III" for purposes of Mr. Malik's claims for declaratory relief. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotations omitted). And without a sufficient injury in fact, the claims for declaratory relief must be dismissed.

The Court further concludes that Mr. Malik failed to establish that his alleged injuries would "likely" to be "redressed by a favorable decision." *Lujan*, 504 U.S. 555, 560–61 (1992). To satisfy redressability, a plaintiff must show that "it is *likely,* as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (emphasis added). "Relief that does not remedy the injury

---

Without a doubt, Mr. Malik might face a border search the next time he arrives at an international airport. And in the appropriate case, declaratory and injunctive relief might be appropriate to eliminate the risk of an allegedly unconstitutional search in the future. But on this record, there is nothing demonstrating that Mr. Malik faces such a risk. He does not allege that he has plans to travel internationally. Nor does he allege that, if he planned a future trip, that he would be subject to a secondary inspection *and* a subsequent border search in accordance with the challenged agency directive. Instead, Mr. Malik's prayer for relief primarily seeks declarations solely related to the *past* search, not related to a "substantial risk" of a *future* search.

suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Here, Mr. Malik cannot show that declaratory relief—regarding alleged constitutional violations *in the past*—would redress his First and Fourth Amendment claims. Outside the context of a criminal trial, the Government is generally free to use evidence obtained in an unlawful search.[4] *See, e.g.*, *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998) (explaining that the Court has continually declined to extend the exclusionary rule to proceedings other than criminal trials); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1034, 1050 (1984) (unlawfully obtained materials generally may be used against an alien in civil immigration proceedings); *United States v. Calandra*, 414 U.S. 338, 347–452 (1974) (explaining that the exclusionary rule "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons" and refusing to extend exclusionary rule to grand jury proceedings).

Thus, even if Defendants' actions were declared to have violated the First or Fourth Amendments, the Government would not have to destroy any retained information to comply with the Court's declaration. And without the Government being required to destroy the retained information to comply with a declaration, the Court cannot remedy Mr. Malik's alleged injuries. Accordingly, the Court dismisses Mr. Malik's claims for declaratory relief for lack of subject-matter jurisdiction.

2. Administrative Procedure Act Claim (Count VIII)

Like his claims for declaratory relief, Mr. Malik does not have standing to pursue his claim under the Administrative Procedure Act ("APA"). Here, Mr. Malik alleges that CBP Directive No. 3340-049A[5]

---

[4] On this point, even when evidence that was obtained in an unconstitutional manner is suppressed, a further remedy of expungement does not necessarily follow. *See, e.g.*, *United States v. Field*, 756 F.3d 911, 917 (6th Cir. 2014). The Court therefore struggles to understand how a declaration could provide Mr. Malik redress.

[5] The APA claim pertains to CBP Directive No. 3340-049A, which discusses the CBP's approach to border searches of electronic devises. *See* CBP DIRECTIVE No. 3340-049A. The CBP separates border searches into two categories: basic searches and advanced searches. An officer may conduct a "basic search" "with or without suspicion." *Id.* ¶¶ 5.1.2, 5.1.3. During a basic search, an officer may examine an electronic device—

6

violates the APA, 5 U.S.C. §§ 706(2)(A), (B). *See* U.S. CUSTOMS & BORDER PROT., CBP DIRECTIVE No. 3340-049A, BORDER SEARCHES OF ELEC. DEVISES (2018). Specifically, he argues that the CBP Directive violates the APA because it is "not in accordance with law" and because it is "contrary to constitutional right, power, privilege, or immunity." ECF No. 1 at 133–34.

Mr. Malik does not have standing to bring this claim for similar reasons. *First*, he does not allege any facts or present any evidence demonstrating a "substantial risk" that he will suffer a similar injury in the future because of this CBP Directive. *Second*, he likewise fails to demonstrate how vacating all or part of the CBP Directive would provide redress. The CBP Directive is not the *source* of the Government's authority to conduct border searches. Thus, vacating all or part of the CBP Directive would not require the Government to destroy any retained information. (Nor would it require the Government to stop conducting border searches.) Thus, a favorable ruling would not redress Mr. Malik's alleged injuries. Accordingly, the Court dismisses Mr. Malik's APA claim for lack of subject-matter jurisdiction.

3. Expungement Claim (Count XII)

Unlike Mr. Malik's other claims, the Court concludes that Mr. Malik has standing to pursue expungement. Mr. Malik requests that the Court order Defendants to "[s]ecurely destroy all copies of digital information that Defendants obtained from the iPhone or by accessing the iPhone and inform Plaintiffs of the manner of the destruction." ECF No. 1. Although not (explicitly) stated, Mr. Malik seeks expungement. *See Sealed Appellant v. Sealed Appellee*, 130 F.3d 695 (5th Cir. 1997) (explaining that "courts have used expungement as a *remedy* for other

---

including searching the information stored on the device—and may review and analyze information encountered at the border. *Id.* An "advanced search" is "any search in which an Officer connects external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents." *Id.* ¶ 5.1.4. An "advanced search" must occur "[i]n instances in which there is reasonable suspicion of activity in violation of the laws enforced or administered by CBP, or in which there is a national security concern, and with supervisory approval at the Grade 14 level or higher." *Id.*

constitutional or statutorily-created rights that have been violated by a state or other governmental agency").

Here, the Parties acknowledge that the Government searched Mr. Malik's cell phone. The Parties likewise acknowledge that the Government (currently) retains information stemming from that search. To be sure, the Government asserts that the information is being retained *only* because Mr. Malik requested a litigation hold. And without this litigation hold, the information would have been destroyed. The Government therefore argues that because Mr. Malik cannot manufacture his own injury-in-fact via a litigation hold, he does not have standing. *See, e.g.*, *Abidor v. Napolitano*, 990 F. Supp. 2d. 260, 275 (E.D.N.Y. 2013) (concluding that the expungement remedy "does not provide a basis to challenge a regulation which provides him with that remedy").

Mr. Malik (undisputedly) requested a litigation hold. But the Government's theory of standing would bar individuals from establishing standing in situations where the Government quickly examines, and then destroys, information produced by a search (regardless of whether the search was constitutional or not). The Court declines to accept such a theory.

Thus, because Mr. Malik's alleged injury is a byproduct of the alleged unconstitutional search—and not the litigation hold[6]—the Court concludes that Mr. Malik has established a continuous, ongoing injury that could potentially be remedied with a favorable ruling. The Court likewise concludes that Mr. Malik's expungement claim satisfies the causation and redressability prongs. Accordingly, Mr. Malik has

---

[6] The CBP Directive does state that "any copies of the information held by CBP must be destroyed" if "there is no probable cause to seize the device or the information contained therein." CBP DIRECTIVE No. 3340-049A ¶ 5.4.1.2. That instruction, however, is specific to information that does not establish probable cause. The Government is not required—per the CBP Directive—to destroy *all* information. Because the CBP Directive allows the Government to retain certain information upon a finding of probable cause at its own discretion, the litigation hold cannot be the only reason that information is (or might be) retained. Accordingly, the Court concludes that the CBP Directive does not afford Mr. Malik full redress of his alleged injuries.

8

standing to assert only one claim: a claim for expungement. The Court now turns to the merits of that claim.

### B. Because the Government did not violate Mr. Malik's constitutional rights, his claim for expungement fails.

Expungement is available as a "*remedy* for other constitutional or statutorily-created rights that have been violated by a state or other governmental agency." *Sealed Appellant*, 130 F.3d at 697. Thus, Mr. Malik's claim for expungement necessarily requires that the Court analyze whether a constitutional violation occurred. As explained below, the Government did not violate Mr. Malik's constitutional rights when it searched his cell phone in accordance with the CBP Directive. As such, the Court grants the Government's motion for summary judgment.

1. <u>The Government's seizure and search of Mr. Malik's cell phone did not violate the Fourth Amendment.</u>

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. As that text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And although reasonableness "generally requires the obtaining of a judicial warrant," *Riley v. California*, 573 U.S. 373, 382 (2014), the "warrant requirement is subject to certain exceptions." *Brigham City*, 547 U.S. at 403.

One such exception is the border-search exception. *Boyd v. United States*, 116 U.S. 616, 623 (1886). This exception is grounded in the Government's "inherent authority to protect, and a paramount interest in protecting, its territorial integrity." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). "Routine searches of the persons and effects of entrants are [thus] not subject to any requirement of reasonable suspicion, probable cause, or warrant." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). Rather, routine "searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border," *United States v. Ramsey*, 431 U.S. 606, 616 (1977), or its functional equivalent. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272–73 (1973) (noting that routine border searches "may in certain

9

circumstances take place not only at the border itself, but at its functional equivalents as well"); *United States v. Klein*, 592 F.2d 909, 911 n.1 (5th Cir. 1979) (recognizing that an international airport is the "functional equivalent" of the border).

This exception, however, is not unfettered. There are certain instances—even at the border—where individualized suspicion is necessary to justify certain "highly intrusive searches," in light of the significance of the individual "dignity and privacy interests" infringed. *Flores-Montano*, 541 U.S. at 152. Border-search jurisprudence thus delineates two types of border searches: routine and nonroutine. The former may be conducted without any suspicion while the latter may be conducted only with reasonable suspicion, not the higher threshold of probable cause. *See United States v. Molina-Isidoro*, 884 F.3d 287, 291 (5th Cir. 2018). "For border searches both routine and not, no case has required a warrant." *Id.*; *see also United States v. Aguilar*, 973 F.3d 445, 450 (5th Cir. 2020) (noting that "no court had required a warrant to conduct a forensic search of a cellphone at the border").

Here, the Fifth Circuit has yet to decide whether a forensic search of a digital phone is a nonroutine border search that requires some form of individualized suspicion, or whether a forensic search is a routine border search requiring no individualized suspicion. Because the search in this case was supported by reasonable suspicion, the Court need not attempt to answer that question. *See, e.g.*, *Alasaad v. Mayorkas*, 988 F.3d 8 (1st Cir.); *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir.); *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019); *United States v. Vergara*, 884 F.3d 1309 (11th Cir.) (Pryor, J., dissenting).

Reasonable suspicion is a "low threshold." *United States v. Castillo*, 804 F.3d 361, 367 (5th Cir. 2015) (citing *United States v. Sokolow*, 409 U.S. 1, 7 (1989)). To clear this "low threshold," all that is required is "some minimal level of objective justification that consists of more than inchoate or unparticularized suspicion or hunch." *United States v. Smith*, 273 F.3d 629, 633–34 (5th Cir. 2001).

Here, the Government surpassed the reasonable-suspicion standard for two independent reasons. *First*, the record establishes that the

10

Government's investigation into an international arms dealer with known ties to the Dallas area supported the search of Mr. Malik's cell phone. *See* ECF Nos. 24, 26. *Second*, the record also establishes that the information discovered during the Government's interview with Mr. Malik's brother—who Mr. Malik was traveling with and hosting in the United States—independently supported the search of Mr. Malik's cell phone. *See* ECF Nos. 24, 26.

To be sure, Mr. Malik testified in a sworn deposition that he does not know the alleged international arms dealer. And the Court has no reason to doubt the veracity of that assertion. The Court, however, considers only the information available to the officers at the time of the decision to search. *Turner v. Lieutenant Driver*, 848 F.3d 678, 691 (5th Cir. 2017). Thus, Mr. Malik's testimony (even if correct) cannot change the reasonable suspicion standard or disprove that reasonable suspicion existed *at the time* of the challenged search.[7]

Accordingly, the "totality of the circumstances" of the information known by the Government *at the time* of the search—whether verified or refuted by extensive discovery—is more than sufficient to give rise to reasonable, particularized suspicion specific to Mr. Malik. Therefore, CBP officers did not violate the Fourth Amendment when they seized,[8] and searched, Mr. Malik's cell phone.[9]

---

[7] The Court makes clear that it is not determining whether Mr. Malik or his brother were in fact connected to an international arms dealer. Nor is the Court deciding whether the reasonable suspicion was the product of a mistake. Instead, the Court holds only that the Government had reasonable suspicion to conduct the search.

[8] To the extent Mr. Malik challenges the length of time the Government detained Mr. Malik at DFW Airport; the length of time it took to search, and then return, his cell phone; or the way the Government dealt with any information consisting of attorney–client privilege; the Court concludes that the Government's actions were reasonable. *See, e.g.*, *United States v. Jarman*, 847 F.3d 259 (5th Cir. 2017) (noting that several months or even years between the seizure of electronic evidence and the completion of the Government's review of it is reasonable); *id.* at 267 n.3 (collecting cases); *United States v. Kolsuz*, 890 F.3d 133, 136 (4th Cir. 2018); *cf United States v. Cotterman*, 709 F.3d 952, 969–70 (9th Cir. 2013) (en banc) (recognizing that the existence of password-protected files is also relevant to assessing the reasonableness of the scope and duration of a search).

[9] As explained, the Court concludes that the Government's seizure and search—conducted in accordance with CBP's Directive—did not violate the Fourth Amendment. For its part, the CBP Directive is consistent with current Fifth Circuit precedent,

11

2. <u>The Government's seizure and search of Mr. Malik's cell phone did not violate the First Amendment.</u>

The Government's seizure and search of Mr. Malik's cell phone did not violate the First Amendment. Although unclear, Mr. Malik appears to argue that First Amendment concerns elevate the level of Fourth Amendment protection. In other words, the First Amendment can require a higher level of suspicion or justification before a government actor can conduct a search. Essentially, Mr. Malik "asks us to carve out a First Amendment exception to the border search doctrine." *United States v. Ickes*, 393 F.3d 501, 506 (4th Cir. 2005). But like the Fourth and Ninth Circuits, the Court declines to do so. *Id.*; *United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008).

3. <u>Because the Government did not violate Mr. Malik's constitutional rights, the Court denies his claim for expungement.</u>

As a remedy, Mr. Malik requests that the Court order Defendants to "[s]ecurely destroy all copies of digital information that Defendants obtained from the iPhone or by accessing the iPhone and inform Plaintiffs of the manner of the destruction." ECF No. 1. Expungement is an extraordinary measure committed to the discretion of the Court. *See Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 701 (5th Cir. 1997).

The Government did not violate the First or Fourth Amendments when they seized, and searched, Mr. Malik's cell phone in accordance with the CBP Directive. The Court therefore denies Mr. Malik's claim for expungement.

## ORDER

As explained above, Plaintiffs do not have standing to sue for declaratory relief or under the APA. The Court therefore **ORDERS** that Counts I–VIII are **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

---

which explained that "only two of the many federal cases addressing border searches of electronic devises have ever required any level of suspicion," and "both required only reasonable suspicion . . . for [] more intrusive forensic search[es]." *Molina-Isidoro*, 884 F.3d at 293. The CBP Directive does not conflict with any applicable law.

12

Further, the Court concludes that no constitutional violation occurred. The Court therefore **GRANTS** the Government's motion for summary judgment and **DENIES** Mr. Malik's motion for partial summary judgment. The Court **ORDERS** that Mr. Malik's expungement claim (Count XII) is **DISMISSED with prejudice.**

The Court further **ORDERS** that Counts IX, X, and XI—which seek only temporary relief—are **DIMISSED as moot.**

**SO ORDERED** on this **4th day** of **August, 2022.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE